```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL DOLLY,                 :    CIVIL ACTION
                               :    NO. 05-360
          Plaintiff,           :
                               :
     v.                        :
                               :
BOROUGH OF YEADON,             :
                               :
          Defendant.           :
```

                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              APRIL 20, 2006

        Before the Court is defendant's motion for summary judgment. For the reasons that follow, defendant's motion will be granted in part and denied in part.

I. BACKGROUND

        For the purposes of this motion, the facts cited below are either undisputed or viewed in the light most favorable to plaintiff. Plaintiff Michael Dolly ("plaintiff") is a police sergeant in the Borough of Yeadon Police Department. He was 52 years old at the time of the alleged discriminatory and retaliatory conduct.

        In August 2003, the Borough of Yeadon ("the Borough") notified the Civil Service Commission ("the Commission") that a lieutenant position with the police department was opening. Plaintiff was interested in the position. The Commission certified plaintiff as eligible, along with two other sergeants, David Splain (age 39) and Thomas Reynolds (age 43).

        According to the Civil Service Regulations, all

candidates eligible to apply for lieutenant must take a written and oral exam. According to plaintiff's interpretation of the Civil Service Regulations, the candidate must score at least 70% on the written exam to proceed to the oral exam. Plaintiff and the other candidates sat for the written exam in September 2003. Only plaintiff passed it (73%). Therefore, under plaintiff's interpretation of the rules, only he should have been permitted to take the oral exam.

On the day after the exam results came out, plaintiff saw the Mayor of Yeadon, Jacqueline B. Mosley ("the Mayor"), in the elevator. The Mayor congratulated plaintiff on the good score. Plaintiff responded, "It feels good to be the only one who passed." According to plaintiff, the Mayor became very upset and tried to convince plaintiff that his interpretation of the Civil Service Regulations was incorrect and all three candidates could take the oral exam. Plaintiff contends that the Mayor got really angry and said, "Well, I'm looking for someone with younger ideas anyway."

Despite plaintiff having passed the written exam, at least four months went by and the oral exam had not been scheduled. Plaintiff then attended a public Borough Council meeting in January or February 2004. At the meeting, he complained publicly that the Mayor and the Borough Council were in violation of the Civil Service Regulations for failing to

schedule the oral exam and for rejecting his view that he was the only one of the three candidates who should be permitted to take the oral exam.

Plaintiff alleges that after he spoke out at the meeting, the Mayor and Borough Council President Jacquelynn Brinkley began a campaign to smear his name and discipline him. Plaintiff was subsequently reprimanded by the police department for speaking out at the Council meeting.  It is, however, unclear whether any discipline was ever actually imposed.

Ultimately, the three candidates were permitted to take the oral exam.  After the oral exam, plaintiff had the second highest total score.  Plaintiff was not promoted to lieutenant, nor were the other two candidates.  The lieutenant position still has not been filled.  Plaintiff believes that the position has not been filled because the Mayor closed the promotion process as if the Mayor had to hire plaintiff, she would not hire anyone. He argues that his age and allegedly protected speech at the Council meeting were and continue to be motivating factors in the Borough Council's refusal to promote him to lieutenant.

On January 26, 2005 plaintiff filed a complaint alleging discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963, as well as First Amendment retaliation via 42

U.S.C. § 1983.  Plaintiff alleges that he was discriminated against on the basis of age and was retaliated against in violation of his First Amendment right to free speech.  Plaintiff sued the Borough only; he did not bring suit against the Mayor in her individual capacity.

On August 22, 2005 the Borough filed the instant motion for summary judgment.  For the following reasons, the Court will grant summary judgment in its favor as to plaintiff's claims for retaliation under the ADEA and the PHRA, as well as First Amendment retaliation brought under § 1983.  The Court will deny summary judgment as to plaintiff's claims for age discrimination under the ADEA and the PHRA.

II.  DISCUSSION

    A.  <u>Legal Standard</u>

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving

4

party regarding the existence of that fact.  Id. at 248-49.  In determining whether any genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party.  Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 305-06 (3d Cir. 2001).

         B.    Liability of a Municipality Under § 1983

         Plaintiff's arguments in his brief and at oral argument focus on the alleged illegal actions of the Mayor.  Plaintiff, however, has not sued the Mayor in her individual capacity, but instead, has sued the Borough only.  Plaintiff contends that the Mayor's actions are attributable to the Borough for the purpose of § 1983 liability.  Thus, the first issue before the Court is whether a municipality can be held liable under § 1983 where defendant has final decisionmaking authority under state law, yet allegations of wrongdoing are made against a non-defendant party only, a party that allegedly provides solicited and influential recommendations to defendant-decisionmaker.

         Defendant argues that the Mayor is not a decisionmaker who has the legal authority to hire or promote employees so the Borough cannot be held liable for the alleged retaliatory action of not promoting plaintiff.  Defendant directs the Court to the Pennsylvania Borough Code, which states:

> [E]very original position or employment in the police force or as paid operators of fire apparatus, except that of chief of police or chief of the fire department, or equivalent,

> shall be filled only in the following manner: the council [Borough Council] shall notify the commission [Civil Service Commission] of any vacancy which is to be filled and shall request the certification of a list of eligibles. The commission shall certify for each existing vacancy from the eligible list, the names of three persons thereon, or a lesser number where three are not available, who have received the highest average. <u>The council shall thereupon, with sole reference to the merits and fitness of the candidates, make an appointment from the three names certified</u>, unless they make objections to the commission as to one or more of the persons so certified for any of the reasons stated in [53 P.S. § 46183] of this act. Should such objections be sustained by the commission, as provided in said section, the commission shall thereupon strike the name of such person from the eligible list and certify the next highest name for each name stricken off. As each subsequent vacancy occurs in the same or another position precisely the same procedure shall be followed.

43 Pa. Cons. Stat. § 46184 (emphasis added). Defendant thus contends that the conduct of the Mayor cannot be imputed to defendant Borough because regardless of the impact that the Mayor may in reality have upon the decisions of the Borough Council, based on state law, the Borough Council makes the promotion decisions.

Plaintiff argues strenuously that regardless of what the statute directs, the Mayor is the "unequivocal decision maker in this case." (Pl.'s Br. 1.) Plaintiff argues that the Mayor "has the ultimate authority for hiring and promotion of police officers. While the Council must vote on her recommendations, it

6

may not act on its own and instead, must await her recommendation before it can take action." (Pl.'s Br. 26-27.) In other words, plaintiff is arguing that, despite the statutory provision delegating final decisionmaking authority to the Borough Council, the Mayor is the *de facto* decisionmaker.

Under § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Social Serv. of the City of N.Y., 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Accordingly,

> a municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, [Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)]; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, [Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)]; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such a behavior official for liability purposes, [City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)].

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

For the purposes of deciding this motion, the Court need focus only on the second method by which liability may attach, i.e., that the Mayor is a decisionmaker, because that is the only method argued by plaintiff.[1] "Municipal liability attaches only where the decisionmaker possesses <u>final authority</u> to establish municipal policy with respect to the action ordered." <u>Pembaur</u>, 475 U.S. at 481 (emphasis added). "In order to ascertain who is a policy maker a court must determine which official had final, unreviewable discretion to make a decision or take action." <u>See</u> <u>McGreevy</u>, 413 F.3d at 369 (quoting <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996)). The identification of officials who possess final policymaking authority with regard to a given act is an issue of state or local law. <u>See</u>

---

1. The Court notes that the circumstances of this case could give rise to potential liability against the Borough under the third method by which liability may attach, i.e., the Borough Council, who the Court holds has the decisionmaking authority in these circumstances, ratified the discriminatory conduct of the Mayor. <u>See</u> <u>Praprotnik</u>, 485 U.S. at 127 ("[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). However, in plaintiff's brief in response to defendant's motion for summary judgment, and again at oral argument, plaintiff's counsel insisted that she was proceeding on the theory that the Mayor was the decisionmaker. At no time did plaintiff's counsel assert any alternative theory despite ample opportunity to do so. In fact, at oral argument when the Court suggested possible alternative theories, plaintiff's counsel responded that she had not "done that specific research." (Mot. Summ. J. Hr'g Tr. 19-20.)

Praprotnik, 485 U.S. at 131. Further, the determination as to who is a decisionmaker for the purposes of § 1983 municipal liability is not a decision for the jury, but is for the court to decide as a matter of law. Id.

The Supreme Court's decision in Praprotnik is on point. In Praprotnik, plaintiff, a city architect, was transferred from the Community Development Agency ("CDA") to the Heritage and Urban Design Commission ("Heritage") despite plaintiff's objections. Id. at 115-16. The transfer was arranged by the Director of CDA and the Director of Heritage. Id. at 115. Plaintiff appealed to the Civil Service Commission, who denied the appeal. Id. at 116. Plaintiff then brought suit against the City, alleging that the actions of the directors were in violation of his First Amendment rights and his right to due process. Id. Plaintiff alleged that the misconduct of the directors exposed the City to § 1983 liability. Id.

The Eighth Circuit held that the directors were municipal policymakers that subjected the City to § 1983 liability for their actions. Id. at 129-30. The Eight Circuit concluded that because the directors initiated the personnel actions, and although the Civil Service Commission reviewed the directors decisions via appeal, the Commission's review was done in a "circumscribed manner" giving "substantial deference" to the decision of the appointing authorities. Id.

9

The Supreme Court reversed the decision of the Eighth Circuit and in doing so, it looked to the City Charter, which expressly stated that the Civil Service Commission had the power and the duty to make the final decision as to any director actions. Id. at 129. The Supreme Court emphasized that "the city established an independent Civil Service Commission and empowered it to review and correct improper personnel actions," and thus, the City could not be held liable for actions of the directors. Id. at 128. The Court concluded, "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." Id. at 130.

The Court went on to expressly reject the "*de facto* final policymaking authority" now raised by plaintiff in the case before the Court:

> Nor do we believe that we have left a "gaping hole" in § 1983 that needs to be filled with the vague concept of "*de facto* final policymaking authority." Except perhaps as a step towards overruling Monell and adopting the doctrine of *respondeat superior*, ad hoc searches for officials possessing such "*de facto*" authority would serve primarily to foster needless unpredictability in the application of § 1983.

Id. at 131.

In the instant case, like the City Charter in Praprotnik, § 46184 of the Borough Code vests final decisionmaking authority on the Borough Council. As explained by

10

the Supreme Court in Praprotnik, it is the state law that awards and describes this final decisionmaking authority which controls. The fact that the Council sought the recommendations of the Mayor and apparently gave that recommendation "substantial deference" is their prerogative, but it does not change the conclusion that pursuant to the Borough Code, the Borough Council and not the Mayor, is the decisionmaker with final, unreviewable discretion for the purposes of § 1983 liability.[2]

There is no genuine issue of material fact that the alleged unlawful conduct in this case is that of the Mayor, not of the Borough Council. Nor is it contested that under state law, the final decisionmaking authority rests with the Borough Council. Thus, defendant is entitled to judgment as a matter of law on plaintiff's § 1983 claims as, even drawing all inferences and resolving all doubts in favor of plaintiff, under state law, it is the Borough Council and not the Mayor whose conduct may be attributed to the municipality.

---

2. The Court adds that this case is not one where the Borough Council delegated its final, unreviewable authority to the Mayor. For instance, in McGreevy, 413 F.3d at 369, the Third Circuit held that the school district could be held liable for the actions of the school superintendent pertaining to employment ratings because the district delegated final policymaking authority, i.e. final, unreviewable discretion, to the superintendent through the Public School Code. In the case before the Court, however, the Borough Council retained final policymaking authority and did not delegate any final authority to the Mayor. In fact, there is evidence that at least some of the Council members wanted plaintiff to be appointed to the position.

C.   Discrimination Under the ADEA and the PHRA

Plaintiff alleges that the decision not to promote plaintiff to the lieutenant position was motivated by age-related animus. An ADEA plaintiff can meet his or her burden in a claim of discrimination by either (1) presenting direct evidence of discrimination under Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989), or (2) presenting indirect evidence of discrimination under the three-step burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In this case, plaintiff can meet his burden by presenting direct evidence of discrimination under Price Waterhouse.[3]

---

3. Though plaintiff argues that he can also survive summary judgment by presenting indirect evidence of discrimination under McDonnell Douglas, the Court need not address that theory because plaintiff has presented sufficient evidence to survive summary judgment under Price Waterhouse. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). In any event, under McDonnell Douglas, plaintiff has adduced evidence sufficient to create a genuine issue of material fact as to whether defendant's proffered reasons, i.e., budgetary concerns and staffing shortages, are pretextual. See Tomasso v. Boeing Co., -- F.3d --, 2006 WL 1008839, at *1 (3d Cir. Apr. 19, 2006). Defendant's proffered non-discriminatory reasons are plagued with "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions [such that] a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations omitted). For instance, plaintiff has produced evidence that the budgetary concerns and staffing issues existed prior to the posting of the lieutenant position. Additionally, there is evidence that the position was closed only after plaintiff, the oldest candidate, became the only available option for the promotion (under plaintiff's interpretation of the Civil Service Regulations). Based on this evidence, under the McDonnel Douglas framework, plaintiff has

12

Under the direct evidence method of proving discrimination, plaintiff must produce "direct evidence that the decision-makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Price Waterhouse, 490 U.S. at 277; see also Connors v. Chrysler Fin. Corp., 106 F.3d 971, 976 (3d Cir. 1998).[4]  Thus, there are two issues before the Court: (1) Whether a reasonable jury could conclude that the Mayor a decisionmaker for the purposes of the ADEA and the PHRA?, and (2) If the Mayor is a decisionmaker, whether plaintiff has produced direct evidence such that a reasonable jury could conclude that the Mayor placed "substantial negative reliance" on plaintiff's age in reaching her decision not to promote him?

First, the Court must determine whether a reasonable jury could conclude that the Mayor is an appropriate decisionmaker for the purposes of the discrimination statutes. In contrast to § 1983 liability, a "decisionmaker" under the ADEA and the PHRA is not restricted to persons with final, unreviewable authority as determined under state law.  Instead, a

---

created a genuine issue of material fact as to whether defendant did not promote plaintiff because of his age.

4.  Under Price Waterhouse, 490 U.S. at 265-66, if an ADEA plaintiff presents direct evidence that his age was a substantial factor in the employment decision, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have made the same decision even if it had not considered age.

decisionmaker for the purposes of discrimination claims include individuals within "the chain of decision-makers who had the authority to hire and fire." Walden v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3d Cir. 1997) (quoting Gomez v. Allegheny Health Serv., Inc., 71 F.3d 1079, 1085 (3d Cir. 1995)). In other words, a decisionmaker is an individual who is "involved in" or "participated in" the decisionmaking process. See id. at 515-16; Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir. 1995).

In this case, the Mayor testified that she makes recommendations to the Borough Council who the police department should hire, and although the Council makes the final decisions, her recommendations are always followed. The Mayor also testified that she is not aware of any occasion that the Borough Council has decided to hire or promote an officer without her recommendation. Based on this evidence, a reasonable jury could conclude that the Mayor is within "the chain of decision-makers who had the authority to hire and fire" plaintiff.

Second, the Court must determine whether the plaintiff has produced direct evidence such that a reasonable jury could conclude that the Mayor, as a decisionmaker, placed "substantial negative reliance" on plaintiff's age in reaching her decision not to promote plaintiff. The Third Circuit decision of Fakete v. AETNA, Inc., 308 F.3d 335, 339-40 (3d Cir. 2002), is on point.

In Fakete, an ADEA plaintiff presented evidence that during an inquiry about his future with the company upon reorganization, his supervisor told him that the company was "looking for younger single people" and that plaintiff "wouldn't be happy [with the company] in the future." Id. at 336. Several months later, the supervisor fired plaintiff. Id. at 337.

The Third Circuit concluded that a reasonable jury could find, based on the supervisor's statement, that plaintiff's age was more likely than not a substantial factor in the supervisor's decision to fire plaintiff. Id. at 339. The Third Circuit emphasized that the supervisor's statement was in direct response to plaintiff's question about his future employment and that the statement unambiguously told plaintiff that he was viewed as a less desirable employee because of his age. Id. at 339-40.[5]

The instant case is virtually indistinguishable from Fakete. On the day after the written exam results came out, plaintiff saw the Mayor in the elevator. The Mayor congratulated

---

5. The Third Circuit distinguished Fakete from other cases where: the statement was made by a person not involved in the unlawful decision, see, e.g., Walden, 126 F.3d at 515-16, the statement was made during conversations unrelated to plaintiff's employment, see Hook v. Ernst & Young, 28 F.3d 366, 375 (3d Cir. 1994), the statement was vague, see Walden, 126 F.3d at 516, and the statement was "random office banter," Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1089 (7th Cir. 2000), or was in a social setting, Hoffman v. MCA, Inc., 144 F.3d 1117, 1122 (7th Cir. 1998). See Fakete, 308 F.3d at 339-40.

15

plaintiff on the good score.  Plaintiff responded, "It feels good to be the only one who passed."  According to plaintiff, the Mayor became very upset and tried to convince plaintiff that his interpretation of the Civil Service Regulations was incorrect and all three candidates could take the oral exam.  Plaintiff contends that the Mayor got really angry and said, "Well, I'm looking for someone with younger ideas anyway."

Like Fakete, the alleged statement unambiguously informed plaintiff that his age was a factor in the decision not to promote him.  Additionally, the statement was made during a one-on-one conversation between the Mayor and plaintiff and the conversation was specifically about plaintiff's opportunity for promotion.[6]

In these circumstances, the Court finds that a reasonable jury could find, based on the Mayor's statement, that plaintiff's age was more likely than not a substantial factor in the decision not to promote plaintiff.  Thus, summary judgment on the age discrimination claims under the ADEA and the PHRA will be denied.

---

6. The Court adds that the Mayor's comment is not a "stray remark," comments by individuals outside of the decisionmaking chain unrelated to the specific employment decision, which, standing alone, "are inadequate to support an inference of discrimination."  Gomez, 71 F.3d at 1085; see also Hook, 28 F.3d at 375; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545-46 (3d Cir. 1992).  The comment here was made by an individual within the chain of decisionmakers and was made during a conversation directly relating to plaintiff's employment.

> D.   Retaliation Under the ADEA and the PHRA

Plaintiff also makes claims of retaliation under the ADEA and the PHRA.  The retaliation claims fail as a matter of law as plaintiff has failed to show there was a causal link between the protected activity, i.e., plaintiff's EEOC complaint, and the adverse employment action, i.e., the denial of the promotion.  See Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 508-09 (3d Cir. 2004).

In February 2004 the examination process for the lieutenant position was over and plaintiff was not promoted.  Then in July 2004, after approximately five months of not being promoted, plaintiff filed a charge of age discrimination with the EEOC.  The EEOC complaint was the first time plaintiff made any allegations involving his age.  Plaintiff now alleges that the denial of his promotion was in retaliation for his EEOC age discrimination claim.

In this case, the timing of the alleged protected activity and the adverse employment action does not establish the requisite causal connection.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997).  Plaintiff's proffered adverse employment action, i.e., the withholding of the promotion, was initiated prior to the protected activity, i.e., the filing of the EEOC complaint.  There is also no evidence that

17

the failure to promote plaintiff was done in anticipation of plaintiff filing the EEOC complaint.  Thus, it cannot be that the EEOC claim caused, or resulted in, the adverse employment action.  Accordingly, summary judgment on the ADEA and PHRA retaliation claims is appropriate.

III. CONCLUSION

       Defendant's motion for summary judgment is granted in part and denied in part.  Summary judgment is granted as to plaintiff's claim of First Amendment retaliation under § 1983 and as to plaintiff's claims of discriminatory retaliation under the ADEA and the PHRA.  Summary judgment is denied as to plaintiff's claims of age discrimination under the ADEA and the PHRA.  An appropriate order follows.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL DOLLY,                  :   CIVIL ACTION
                                :   NO. 05-360
        Plaintiff,              :
                                :
    v.                          :
                                :
BOROUGH OF YEADON,              :
                                :
        Defendant.              :
```

<u>ORDER</u>

**AND NOW**, this **20th** day **April, 2006,** it is hereby **ORDERED** that defendant's motion for summary judgment (doc. no. 7) is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's motion is **GRANTED** as to plaintiff's claims for retaliation under the ADEA (Count II) and the PHRA (Count IV), as well as plaintiff's claim for First Amendment retaliation under 42 U.S.C. § 1983 (Count V). Defendant's motion is **DENIED** as to plaintiff's claims for age discrimination under the ADEA (Count I) and the PHRA (Count III).

**AND IT IS SO ORDERED.**

                                     S/Eduardo C. Robreno
                                    **EDUARDO C. ROBRENO, J.**